IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 27, 2024

**STATE OF TENNESSEE v. RANDY SCOTT BIBLE**

**Appeal from the Circuit Court for Hamblen County**
**No. 18-CR-261   Alex E. Pearson, Judge**

_____

**No. E2023-00593-CCA-R3-CD**
_____

A Hamblen County jury convicted the Defendant, Randy Scott Bible, of aggravated statutory rape and soliciting sexual exploitation of a minor, and the trial court sentenced him to a fourteen-year sentence, with one year of confinement and the remainder to be suspended to supervised probation. On appeal, the Defendant contends that the evidence is insufficient to support his convictions and that he received the ineffective assistance of counsel. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN W. CAMPBELL, SR. and MATTHEW J. WILSON, JJ., joined.

J. Todd Estep, District Public Defender; Colby A. Collins, Assistant Public Defender, Morristown, Tennessee (on appeal); and Travis D. McCarter, Sevierville, Tennessee (at trial), for the appellant, Randy Scott Bible.

Herbert H. Slatery III, Attorney General and Reporter; Abigail H. Rinard, Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Kenneth R. Lovell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Background and Facts**

This case arises from the thirty-five-year-old Defendant having a sexual relationship with the victim, beginning when she was thirteen years old. The two met on an "adults-only" dating website, where the victim presented herself as a twenty-two year old woman. Thereafter, the two exchanged messages for a period of time, and the victim sent the Defendant numerous pornographic photos and videos. Eventually, the victim made it clear

that, to meet the Defendant, she would have to sneak out of her parents' house without their permission. On one occasion, the Defendant picked the victim up from her parents' house and drove her to a parking lot at a lake where they had sexual intercourse in his vehicle. He picked her up a second time, took her to his mother's house, and had sexual intercourse with her. On a third occasion, the victim's parents discovered her missing from their home, and they called the police who located the victim at a nearby hotel with the Defendant, which resulted in his arrest. For this conduct, a Hamblen County grand jury indicted the Defendant for two counts of aggravated statutory rape and one count of soliciting sexual exploitation of a minor.

## A. Trial

The following evidence was presented at the Defendant's trial: Detective Joshua Sipe, a detective with the Hamblen County Sheriff's Department, testified that he was assigned to an investigation following a call to the sheriff's department from the victim's parents, who were concerned about messages, pictures, and videos found on the victim's phone. On January 13, 2018, the victim's parents reported to police that she had been raped. In his ensuing investigation, pursuant to a warrant, Detective Sipe did a forensic analysis of the victim's and the Defendant's phones, which allowed him to view the messages exchanged between the victim and the Defendant, along with the photos and videos they had exchanged.

The victim testified and identified a printed copy of the text messages sent between herself and the Defendant. The messages were entered into the record as an exhibit during Detective Sipes's testimony. The Defendant sent her messages asking if she was fake and wondering why she was waiting up late at night for her parents to do go to bed so she could sneak out to meet him. The victim stated that the Defendant requested, via text message on January 2, 2018, that she write his name on her stomach and send him a video of it, which she did. She then sent him a message indicating she would have to "wipe scott off" her stomach so her parents would not see it. The Defendant asked her to send another video, saying the following, "How about I show you a preview of me watching this video, and you making me a video of you playing with yourself, and I'll do a longer one with me coming, watching you?" He sent another message, "So I'll show you me jacking off now, and you make another of you touching yourself under five minutes. I'll watch[ ] it and tell you what I think while I [j]ack off and come for you." The videos were played for the jury. The Defendant sent another message, "I just watched the first minute[s] and already my pants are feeling tighter. You[r] skin looks so soft I want to touch it." The victim read several more text messages sent to her by the Defendant asking for videos and detailing explicit sexual acts.

The victim stated that she met the Defendant on the website "Adult Friend Finder" and that she had claimed to be twenty-two years old and in college. In reality, she was thirteen years old and in the seventh grade. The victim identified a photo taken of her

during that time period and stated that it was an accurate depiction of how she looked at age thirteen. She agreed she was wearing some makeup in the picture. The victim testified that, after she posted online that she was twenty-two years old, she later told the Defendant she was twenty. She also told him she had previously had sexual intercourse and had consumed alcohol so that she would seem older. The victim stated that she knew that the online website was for adults only, but that she wanted attention and did not completely understand the concept of sex.

The victim testified that the first time she and the Defendant met in person, on January 13, 2018, they had sexual intercourse. The Defendant picked her up in his truck from her parents' house at around 8.p.m. and they went to a lake. They had sexual intercourse in his truck and then he drove her home. The Defendant wore a condom. When the victim returned home, her mom had discovered her missing and had called the police. The victim did not tell the Defendant that the police had been contacted.

For their second meeting, which occurred on February 5, 2018, the Defendant picked up the victim from her parents' house, and they spent the day together. The victim recalled that she snuck out of her house while her mom was asleep and her dad was out. The victim recalled that they went to the Defendant's mother's house for a little while, then drove to a "lookout spot," and then went to a hotel. The victim stated they had sexual intercourse at his mother's house, and the Defendant wore a condom.

On or about February 24, 2018, the victim and the Defendant went to a hotel and the police were called to respond there. The victim stated that she and the Defendant did not engage in intercourse that day.

The victim agreed that, while exchanging the pictures and videos, the Defendant believed she was an adult and, if she talked about her parents or living situation, he would sometimes ask if she was an adult. The two talked about mature, adult topics fairly consistently for two to three months before they met in person. The victim agreed that she was unable to identify the Defendant in a photographic lineup because when they met in person it was dark, and he was wearing a hat. The victim stated that she could not see the Defendant's face well as a result. The victim agreed that she wore makeup to appear older when she met the Defendant in person.

The victim testified that, after their first sexual encounter, she did not tell the Defendant about the police being called by her parents because she did not want to scare him and tell him she was a minor. She agreed that the Defendant did not force her to do anything. She agreed that, when the Defendant was arrested, he was still under the impression that she was an adult. She agreed that the Defendant had asked her several times throughout their conversations if she was an adult, and she had reassured him that she was. After his arrest, the victim sent the Defendant an apology message because she felt guilty and that it was her fault for "ruin[ing]" the Defendant's life.

3

Sergeant Joshua Bright testified that he was employed by the Sevierville Police Department and, on February 24, 2018, he responded to the victim's parents' second call to police. The victim's mother took Sergeant Bright to a nearby Super 8 Motel where they knocked on a motel room door. The Defendant answered and led them inside to the victim. Sergeant Bright allowed the victim to dress in private and then spoke to her individually. He stated that she had the appearance of a juvenile.

Detective Preston Parish testified that he was employed by the Sevierville Police Department and responded to the Super 8 Motel along with Sergeant Bright. He encountered the victim, who he said appeared to be a minor.

Detective Sipe was recalled to the witness stand, and he reviewed the text message records between the victim and the Defendant. He read aloud her many messages to the Defendant detailing that she was sneaking out of her house through the window and about her efforts to hide their encounters from her family. The Defendant commented on a picture of the victim, saying that she looked young because of her "smooth skin." In another text message, the victim told the Defendant she was "too immature to handle a situation like this." In another message, the victim apologized for being a "crazy ass girl" who cannot use her phone, and who "doesn't have a driver's license " with "strict parents." She indicated she was in school at the time. Detective Sipe stated that the Defendant was thirty-five years old at the time of these events.

On cross-examination, Detective Sipe read messages from the victim to the Defendant directly telling him, "I am young. I'm not 30. You know what I meant. I'm 20. I told you that." Detective Sipe agreed that the victim represented multiple times to the Defendant that she was older than eighteen and that she made "every effort" to make the Defendant believe that she was an adult.

The videos and pictures exchanged between the Defendant and the victim were shown to the jury. One video showed the victim, dressed in a bra and underwear, with the Defendant's name written on her stomach. In another picture, the victim is nude and lying on her bed. A second video, played for the jury, showed the victim without clothes on masturbating. A picture of the Defendant's penis, sent to the victim, was also shown to the jury. A third video, shown to the jury, showed the victim masturbating with an object.

Based on this evidence, the jury convicted the Defendant of one count of aggravated statutory rape (Count 2 of the indictment) and one count of soliciting sexual exploitation of a minor (Count 3 of the indictment). The trial court granted the Defendant's motion for judgment of acquittal and dismissed the second count of aggravated statutory rape (Count 1 of the indictment). For his convictions, the trial court imposed sentences of ten years for the soliciting sexual exploitation of a minor and four years for the aggravated statutory rape, to be served concurrently. The trial court ordered the Defendant to serve one year in

4

confinement and suspended the remainder of his sentence to supervised probation. It is from these judgments that the Defendant now appeals.

## II. Analysis
### A. Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support his convictions. As to the soliciting sexual exploitation of a minor conviction, he contends that the evidence shows he intended to solicit sexual conduct from an adult, not a minor. As to the aggravated statutory rape conviction, he contends that the State failed to prove that he acted knowingly with respect to the victim's age. The State responds that the jury could have reasonably inferred from the Defendant's behavior, coupled with the victim's appearance on the videos, pictures and in-person, that he intentionally solicited sexual images from a minor and that he acted knowingly with regard to the victim's age. We agree with the State.

When an accused challenges the sufficiency of the evidence, this court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn.

1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This court must afford the State the "strongest legitimate view of the evidence" contained in the record, as well as "all reasonable and legitimate inferences" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

### a. Soliciting Sexual Exploitation of a Minor (Count 3)

As charged here, soliciting sexual exploitation of a minor occurs when a person eighteen (18) years of age or older, by means of oral, written or electronic communication, electronic mail or internet service, including webcam communications, directly or through another, intentionally commands, hires, persuades, induces, or causes a minor to engage in simulated sexual activity that is patently offensive or in sexual activity, where such simulated sexual activity or sexual activity is observed by that person or by another. T.C.A. § 39-13-529(a). The trial court followed the Tennessee Pattern Jury Instructions, and correctly instructed the jury that the State was required to prove beyond a reasonable doubt the following elements:

> Number 1, that the Defendant was 18 years of age or older, and Number 2, that the Defendant, by means of electronic mail or internet service directly, intentionally persuaded, induced, or caused a minor to engage in sexual activity or simulated sexual activity that was patently offensive. And Number 3, that the sexual activity or simulated sexual activity was observed by the Defendant.

The Defendant contends that the State has failed to prove beyond a reasonable doubt that he *intentionally* solicited *a minor* for sexual activity. We respectfully disagree. The

6

Defendant's argument is that he intended to solicit sexual conduct from an adult, not a minor. Although we agree with the Defendant that the mens rea of "intentional" applies to each element of this offense, the properly instructed jury, by virtue of its verdict, determined that the Defendant intended to solicit sexual conduct from a minor. The jury heard evidence that the Defendant had serious concerns as to whether the victim was as old as she claimed to be. The jury saw the text messages and videos that contained indications that the victim was a minor. The Defendant's intent is a jury question, to be determined based on the evidence presented at trial. We also note that the jury was properly instructed pertaining to Tennessee Code Annotated section 39-11-502, which precludes the defense of ignorance or mistake of fact in a prosecution for soliciting sexual exploitation of a minor. The Defendant's argument with respect to whether the State presented sufficient evidence that he intentionally solicited a minor for sexual activity, however, is a proper issue for our review.

Our review of the record reveals that there is ample evidence from which the jury could conclude that, between January 13, 2018 and February 24, 2018 (as alleged in the indictment), the Defendant intentionally solicited sexual images from the minor victim. The evidence, viewed in the light most favorable to the State, was that the Defendant went on an adult dating website and connected with the victim. After exchanging messages with the victim for a period of months, the Defendant repeatedly asked for and the victim sent to him numerous sexual images and videos. The Defendant, in text messages, made many references to the images and videos, indicating that he had viewed them. The Defendant also sent an image of his penis to the victim. During this course of conduct by the Defendant, he expressed concerns about the victim's age. Text messages and videos raised issues about the victim's actual age. These issues were magnified by the victim's repeated concerns about sneaking out of the house to keep her parents from finding out that she was meeting the Defendant. The victim was thirteen years old at the time, and the Defendant was over thirty-five years old. This is sufficient evidence from which a rational jury could have concluded beyond a reasonable doubt that the Defendant intentionally persuaded, induced, or caused the minor victim to engage in sexual activity and that the Defendant observed the activity. The Defendant is not entitled to relief.

### b. Aggravated Statutory Rape (Count 2)

A person commits aggravated statutory rape when the defendant unlawfully sexually penetrates a victim who is at least thirteen (13) years of age but less than eighteen (18) years of age, and the defendant is at least ten (10) years older than the alleged victim. T.C.A. § 39-13-506(c). "Sexual penetration," as the term is used in the statutory rape law, is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." T.C.A. § 39-13-501(7). Neither the statute nor the sentencing commission comments following the statute specify a culpable mental state which typically

7

indicates that any of the three mental states – intentional, knowing, or reckless – would be sufficient. In Count 3, however, the indictment charged, and the trial court instructed, that the mental state was "knowing", which is defined as follows:

> a person acts knowingly with respect to the conduct or to the circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the results.

T.C.A. § 39-11-106.

The evidence viewed in the light most favorable to the State was that the Defendant and the victim met online through an adult dating website and began sending text messages to each other for a period of several months. They made repeated plans to meet in person, but the victim indicated that she could not make firm plans because she lived with her parents and needed to sneak out of their house. Eventually, they planned for the victim to sneak out of her parents' house. The Defendant picked her up and they had sexual intercourse in his truck. On a second occasion, the Defendant picked the victim up from her parents' home knowing she had to sneak out of her house without her parents' detection. After picking her up, the two went to his mother's house, where they had sexual intercourse. In at least one text message, the Defendant stated that the victim looked younger than she claimed based upon the texture of her skin. The Defendant also asked her multiple times about her age. The victim, during the course of their communication, stated that her age was twenty-two and then lowered it to twenty. Multiple law enforcement officers testified that the victim appeared to be underage, and the photos and videos included in the record support that testimony.

Concerning the aggravated statutory rape offense, the trial court correctly instructed the jury that the State was required to prove the following:

> Number 1, that the Defendant had unlawful sexual penetration with the alleged victim and, Number 2, that the alleged victim was at least 13, but less than 18 years of age; and Number 3, that the Defendant was at least 10 years older than the alleged victim; and, Number 4, that the Defendant acted knowingly.

In our view, the evidence supports the finding by the jury that these elements were proven beyond a reasonable doubt. The defendant was thirty-five years of age. He had not previously known the victim. The victim was a seventh-grader who lived with her parents and was not able to come and go from their house as she pleased, as would have been normal for an adult to do. The victim made multiple comments regarding her youth and immaturity and lowered her stated age at some point in their communication. The

8

Defendant acknowledged her youthful appearance but continued his relationship with her. The Defendant asked her about her age several times, which supports the jury's consideration that he did not believe her assertions about her age or that he suspected that she was misrepresenting her age. The jury had the opportunity to view the victim firsthand and to hear her testimony. It acted within its prerogative in determining that the Defendant "was aware of the nature of the conduct or that the circumstances exist[ed]."

On appeal, the Defendant does not dispute any element of this offense other than the element that he acted "knowingly" with regard to the fact that the victim was less than eighteen years of age. Mistake of fact is an available defense in statutory rape cases. *See* T.C.A. § 39-11-502 (stating that "ignorance or mistake of fact is a defense to prosecution if the ignorance or mistake negates the culpable mental state of the charged offense"). If the evidence fairly raises mistake of fact, which we conclude it did here, the trial court must instruct the jury to consider the defense and that any reasonable doubt on the existence of the defense requires an acquittal. *State v. Ballinger*, 93 S.W.3d 881 (Tenn. 2001), *overruled on other grounds by State v. Collier*, 411 S.W.3d 886 (Tenn. 2013). The trial court properly instructed the jury as follows:

> In this case, the State must prove beyond a reasonable doubt the required culpable mental state of the Defendant which is knowingly for the charge[d] [offense] of aggravated statutory rape, . . . Although a [d]efendant's ignorance or mistake of fact may constitute a defense to the offense of aggravated statutory rape, . . . the Defendant may be convicted of the offense for which the Defendant would be guilty if the fact were as the Defendant believed. Ignorance or a mistake of fact of law is never a defense to prosecution. If evidence is introduced supporting the defense of ignorance or mistake of fact, the burden is on the State to prove beyond a reasonable doubt that the Defendant did not act through ignorance or mistake of fact. If from all the facts and circumstances you find the Defendant acted through ignorance or, or mistake of fact or if you have a reasonable doubt as to the, as to whether the Defendant acted through ignorance or mistake of fact, then you must find him not guilty. The defense of ignorance or mistake of fact is not available for the crime of soliciting sexual exploitation of a minor. The fact that the person charged was ignorant or mistaken as to the age of the minor is not - - renders that defense of ignorance or mistake of fact ineligible for soliciting sexual exploitation of a minor. In other words, you cannot consider that for Count 3.

We conclude that there is sufficient evidence from which a jury could conclude that the Defendant was guilty of aggravated statutory rape. The Defendant is not entitled to relief.

**B. Ineffective Assistance of Counsel**

The Defendant next asserts that he received ineffective assistance of counsel. This court has consistently "warned defendants and their counsel of the dangers of raising the issue of ineffective assistance of trial counsel on direct appeal because of the significant amount of development and fact finding such an issue entails." *Kendricks v. State*, 13 S.W.3d 401, 405 (Tenn. Crim. App. 1999). Raising the issue of ineffective assistance of counsel on direct appeal is "a practice fraught with peril." *State v. Thompson*, 958 S.W.2d 156, 161 (Tenn. Crim. App. 1997).

Nonetheless, our supreme court has stated that claims of ineffective assistance of counsel may be presented on direct appeal and that the reviewing court must apply the same standard as utilized for such claims in post-conviction proceedings. *See State v. Burns*, 6 S.W.3d 453, 461 n. 5 (Tenn. 1999). Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419, n. 2 (Tenn. 1989).

A defendant will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the *Strickland* test. *See Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a defendant raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The prejudice prong requires a defendant to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Failure to satisfy either prong results in the denial of relief. *Id.* at 697.

Attorneys are to be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *See United States v. DeCoster*, 487 F.2d

1197, 1201 (D.C. Cir. 1973).

The Defendant claims that his trial counsel was deficient for failing to adequately raise the issue of the Defendant's mental state and whether he "knew or should have known the victim's age." He contends that statements during the State's closing argument were not supported by the law and that counsel should have objected to those statements. He also argues that counsel was deficient for failing to make a motion for a judgment of acquittal on the soliciting sexual exploitation charge and for failing to challenge the sufficiency of the evidence in the motion for new trial. The State responds that counsel raised the issue of the Defendant's mental state at several points during jury instruction discussions and also assured that the mistake of fact instruction was included. As for the closing argument, the State responds that the prosecutor's comment about the Defendant's knowledge of the victim's age did not misconstrue the law, and that counsel had no grounds to object. Finally, the State argues that the Defendant has not shown how, but for trial counsel's errors, the result of his trial would have been different. We agree with the State.

Trial counsel raised the issue of intent multiple times with the trial court and ensured that the mistake of fact instruction was included in the jury instructions. The evidence about the Defendant's knowledge of the victim's age was a question of fact for the jury, and counsel adequately cross-examined the victim about her representations of her age and then argued before the jury that she had given the Defendant every reason to believe she was an adult. The jury, as is within its province, chose to reject that argument, and the Defendant has not shown that they would have done differently but for counsel's alleged ineffectiveness. The same applies to the State's closing argument, and counsel's decisions not to pursue certain avenues at trial. Counsel is afforded wide latitude in trial strategy, and the Defendant has not shown that if counsel had made different tactical decisions, the outcome of his proceeding would have been different. The Defendant is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's judgments, and remand for the entry of corrected judgments, as follows: The judgment in Count 2 should reflect a four-year sentence concurrent with Count 3; the judgment for Count 3 should reflect a ten-year sentence, concurrent with Count 2.

_____
ROBERT W. WEDEMEYER, JUDGE

11